UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA ANN BARBER, STEVEN
BARBER, DAVID HALL, PAUL JENSEN,
JENNIFER KULA-HAUK, STEVEN
PETTIT, TROY HUIZING,

      Plaintiffs,

v.

WILLIAM OVERTON, Director of the
Michigan Department of Corrections, in
his official capacity; FRITZ JACKSON,
LORENZO LOWERY, and BRUCE
SIBERT, in their individual and official
capacities;

      Defendants.
_____/

File No. 1:03-CV-329

HON. ROBERT HOLMES BELL

**O P I N I O N**

This case arises from an unusual and ultimately unfortunate set of circumstances by which certain Plaintiffs' names, social security numbers, and dates of birth were disclosed to prisoners in the Ionia Maximum Security Correctional Facility. Plaintiffs assert violations of their federal constitutional right to due process, their state constitutional rights to due process and fair and just treatment, as well as state law claims of invasion of privacy, intentional infliction of emotional distress, and gross negligence. Plaintiffs seek compensatory as well as declaratory and injunctive relief. Before the Court is Defendants'

motion for summary judgment. For the reasons set forth below, the Court grants Defendants' motion for summary judgment.

I.

The relevant facts are not in dispute. Plaintiffs are corrections officers employed by the Michigan Department of Corrections (MDOC) at the Ionia Maximum Security Correctional Facility (IMAX). During the summer of 2002, Defendant Bruce Sibert, an investigator for MDOC's Internal Affairs section, investigated allegations by two prisoners that they were sexually assaulted by MDOC employees at the IMAX. As part of his investigation, Sibert interviewed numerous staff members, including certain Plaintiffs, the prisoners who alleged the assault, and a confidential inmate informant. Sibert included the statements of the staff, prisoners, and informant in his investigative report summarizing his investigation. Sibert's general practice for identifying individuals in his report was to use their name, date of birth and social security number. Upon completing the investigation, Sibert provided his report to his supervisor in Internal Affairs.

Sibert's investigation concluded that the prisoners' allegations were unfounded. Based upon the Internal Affairs investigative report, the IMAX administration filed prisoner misconduct charges against each prisoner for interference with administrative rules. Defendant Fritz Jackson, an MDOC Hearing Officer, conducted a hearing on the misconduct charges. Jackson reviewed statements by the prisoners, the informant's testimony, and Sibert's Internal Affairs investigative report. Ultimately, Jackson sustained the charges

2

against both prisoners. Jackson also made a specific finding that the identity of the confidential inmate informant should not be revealed in response to a confidentiality request by Defendant Lorenzo Lowery. Jackson's findings were set forth in a MDOC Major Misconduct Hearing Report.

The prisoners appealed the misconduct charges. As part of their appeal, the prisoners requested a copy of the hearing packet reviewed by Jackson. Lowery, a Hearing Investigator at the IMAX, was responsible for responding to the prisoners' requests. Lowery provided each prisoner with a copy of the hearing packet, including Sibert's Internal Affairs investigative report containing Plaintiffs' personal information. Although Lowery requested that the inmate informant's identity be redacted, he did not request redaction of the Plaintiffs' personal information. Consequently that information was given to the prisoners and has been disseminated throughout the inmate population at the IMAX. As a result of the disclosure, Plaintiffs have received numerous threats from prisoners specifically referencing their social security numbers, prisoners have been able to obtain information regarding Plaintiffs' family members, and photographs of Plaintiffs Steven and Melissa Ann Barber's home were intercepted in the prison mail system.

Plaintiffs subsequently filed this action alleging a violation of their federal constitutional right to due process under 42 U.S.C. § 1983 and violations of Article 1, Section 17 of Michigan's constitution. Plaintiffs also allege common law torts of invasion

3

of privacy and disclosure of private facts, intentional infliction of emotional distress, and gross negligence.

*Procedural Background*

The Court has issued two previous opinions in this case. On January 20, 2004, the Court granted in part and denied in part a motion to dismiss under FED. R. CIV. P. 12(b)(6) filed by Defendant Overton and Defendant Jackson. The Court held that Defendant Jackson was entitled to absolute judicial immunity. Accordingly, the § 1983 claim against Jackson in his individual capacity and the state law claims against him were dismissed. Further, the Court dismissed the § 1983 claim for monetary damages against Overton and Jackson in their official capacities.[1]

On January 20, 2005, the Court issued an opinion granting in part and denying in part Defendants' motion to dismiss Plaintiffs' amended complaint. The Court held that Plaintiffs' § 1983 claim was dismissed to the extent it sought monetary damages from Defendants Sibert and Lowery in their official capacities. Further, the Court denied Defendants' motion to dismiss the § 1983 claim and the state law claims against Sibert and Lowery. The Court also held that Plaintiff Melissa Barber lacked standing to pursue a § 1983 claim because her personal information was not released to the prisoners.

---

[1]In an opinion dated December 2, 2004, the Court denied Plaintiffs' motion for reconsideration regarding Jackson's absolute judicial immunity. *See* Docket #87.

As a result of the Court's previous opinions, the remaining claims are: 1) § 1983 claim against all Defendants, 2) state constitutional tort claims against Overton in his official capacity, and 3) invasion of privacy, intentional infliction of emotional distress, and gross negligence against Sibert and Lowery.  Defendants' have moved for summary judgment on all remaining claims.

## II.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 301 (6th Cir. 2005).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue

5

of material fact that must go to trial. *Anderson,* 477 U.S. at 256. To sustain this burden, a plaintiff may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Daniel v. Cantrell*, 375 F.3d 377, 381 (6th Cir. 2004). Rather, the party opposing a motion for summary judgment has the burden to come forth with requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery. *Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact. *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004).

### III.

The parties agree that Plaintiffs' case rises and falls on the strength of their § 1983 claim. Plaintiffs assert that Defendants violated their substantive due process rights by disclosing the personal information to prisoners at IMAX. Defendants Sibert and Lowery contend they are entitled to qualified immunity. "Qualified immunity is an affirmative defense shielding governmental officials from liability as long as their conduct does 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cartwright v. City of Marine City*, 336 F.3d 487, 490 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is a two-part analysis. First, in the light most favorable to Plaintiffs, "do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if a constitutional right was violated, "the next, sequential step is to ask whether the

right was clearly established." *Id.*, *see also Davis v. Brady*, 143 F.3d 1021, 1024 (6th Cir. 1998).

To establish a claim under § 1983, Plaintiffs must show Defendants: 1) acted under color of state law; and 2) deprived Plaintiffs of a right, privilege, or immunity secured by the federal Constitution or law of the United States. *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002). Neither party disputes that Defendants Lowery and Sibert were acting under color of state law.

Plaintiffs allege Defendants violated their constitutional right to substantive due process by disclosing their names, social security numbers, and dates of birth to prisoners in the IMAX facility. Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 197 (1989). The Sixth Circuit, however, has adopted certain exceptions to this rule. *See e.g.*, *Sargi v. Kenty City Bd. of Educ.*, 70 F.3d 907, 910-11 (6th Cir. 1995). Plaintiffs contend that Defendants are liable under the state-created danger theory, under which state officials may be liable for constitutional violations "when their affirmative actions directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way." *Ewolski v. City of Brunswick*, 287 F.3d 492, 509 (6th Cir. 2002).

To show a state-created danger, Plaintiffs must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of

7

violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff. *Cartwright*, 336 F.3d at 493 (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)).

Plaintiffs contend this case is indistinguishable from *Kallstrom*, in which the Sixth Circuit held that undercover police officers had a fundamental privacy interest in the personal information contained in their personnel records and that city officials violated this right by publicly disclosing the files. 136 F.3d at 1059. At first glance, *Kallstrom* and this case appear strikingly similar. Both cases involve the disclosure of personal information, such as social security numbers, to private individuals thus endangering the plaintiffs. A review of the record before the Court, however, reveals that *Kallstrom* is not applicable to this case.

Sibert collected Plaintiffs' names, dates of birth, and social security numbers and placed them in his investigative report according to his general practice. Deposition of Bruce Sibert at pg. 47, Exhibit 1, attached to Defendants' Brief in Support of Defendants' Motion for Summary Judgment. Sibert explained that he learned this identification method through his training with the Michigan State Police. *Id*. at 47-48. Sibert also testified that his completed report is only intended to go his direct supervisor in Internal Affairs and that the Internal Affairs department does not determine what information is released to a prisoner. *Id*. at 84-85.

Defendants also provide the affidavit of Defendant Lowery. *See* Affidavit of Lorenzo Lowery, Exhibit 2, attached to Defendants' Brief in Support of Defendants' Motion for Summary Judgment. Lowery acknowledges that upon receiving the hearing packet requests from each prisoner he redacted the statements deemed confidential by Defendant Jackson. Lowery Affidavit at ¶¶ 2-3. Lowery avers that prior to providing the hearing packet to the prisoners he was not aware that the Internal Affairs investigative report contained Plaintiffs' social security numbers and dates of birth of Plaintiffs and it was only after he released the packet to the prisoners that he learned that the report contained such information. *Id*. at ¶ 4, 7. Lowery also explained that he could not recall ever receiving investigation packets in the past containing personal information and was not looking for such information when he redacted the inmate informant's information. *Id*. at ¶ 5. Finally, Lowery explains that if he had been aware that the investigative report contained Plaintiffs' personal information, he would not have released the information without seeking authorization to redact it. *Id.* at ¶ 6.

Plaintiffs have not provided any evidence to contradict Sibert's testimony and Lowery's affidavit. Unlike *Kallstrom*, the facts of this case indicate a failure to take action and complete unawareness of the dangerous circumstances. This is in direct contrast to the facts of *Kallstrom*. In *Kallstrom*, plaintiffs were undercover police officers involved in the investigation of a violent gang in Columbus, Ohio. 136 F.3d at 1059. Plaintiffs testified during the criminal trial of eight gang members. During trial, defense counsel requested and received from the city, plaintiffs' personnel file containing names and addresses of

9

immediate family, bank records, social security numbers, polygraph results, and their home addresses. *Id*. Defense counsel apparently passed the files on to the criminal defendants. *Id*. The Sixth Circuit held that "[i]n *affirmatively releasing private information* from the officers' personnel files to defense counsel . . . the City's actions placed the personal safety of the officers and their family members . . . in serious jeopardy." *Id*. at 1067 (emphasis added).

That is not the case here. There is no evidence that Defendants affirmatively disclosed Plaintiffs' information to the prisoners. Specifically, Lowery failed to notice that the investigative report contained Plaintiffs' personal information and indeed was unaware that such information was even included in the hearing packet.[2] *See Cartwright*, 336 F.3d at 493 (holding that a failure to act does not rise to the level of "affirmative acts" necessary to establish a state-created danger). With respect to Sibert, while he arguably took an affirmative step by placing the personal information in his investigative report, there is no

---

[2]Plaintiffs' attempt to create an issue of fact regarding Lowery's actions based upon the fact that the prisoner informant's information appeared on the same page as certain Plaintiffs' personal information is unavailing. *See* Internal Affairs Investigative Report at 7, Exhibit 3, attached to Defendants' Brief in Support of Defendants' Motion for Summary Judgment. Lowery's failure to recognize that the confidential informant's information and Plaintiffs' social security number appeared together on a single page in the twenty-two page report is not sufficient to create a genuine issue of material fact. At best, it suggests that Lowery was negligent in his review of the file, but without more, it does not reveal the necessary intentional or affirmative action on his part. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986) (holding that the negligence of government officials cannot form the basis of a § 1983 action).

evidence that he knew that his actions specifically endangered the plaintiff.[3]  *See Kallstrom*, 136 F.3d at 1066 ("The state must have known or clearly should have known that its actions specifically endangered an individual."); *Ewolski*, 287 F.3d at 509 (state officials are liable under the state-created danger theory "when their affirmative actions directly increase the vulnerability of citizens to danger . . . .).  Placement of the information in an Internal Affairs report does not itself increase the danger that the information will be disclosed to prisoners.  Further, Sibert testified that his report was submitted to his direct supervisor in Internal Affairs and that the Internal Affairs department does not determine what information from the report is provided to a prisoner.  This is in stark contrast to the actions of the city in *Kallstrom*, where they received a specific request for plaintiffs' personnel files and knowingly released the private information to defense counsel.  *Id*. at 1059.[4]

In sum, the record simply does not reveal any intentional or affirmative action by Defendants that violated Plaintiffs' due process rights.  At best, the evidence establishes a negligence case against Defendants which is not sufficient to state a viable claim under

---

[3] Plaintiffs' contend that Sibert satisfied the "affirmative act" requirement by placing the personal information in his report citing *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2002) ("the intent in question is the intent to commit the act, not the intent that a certain result be achieved.").  In this case, however, Sibert's act of placing the information in his report is not the constitutional violation.  *Cf. Kallstrom*, 136 at 1067 (holding that the affirmative release of private information violated plaintiffs' due process rights).  Rather, the disclosure of the personal information to the prisoners is the violation.  Sibert's actions alone did not necessarily "create[] or increase[] the risk that the plaintiff would be exposed to an act of violence by a third party."  *Cartwright*, 336 F.3d at 493.

[4] In fact, prior to their employment with the city, plaintiffs were assured their personal information would be held in strict confidence.  *Kallstrom*, 136 F.3d at 1059.

§ 1983. *See e.g. Daniels*, 474 U.S. at 333, *Upsher*, 285 F.3d at 453-54. Accordingly, because Plaintiffs' have failed to allege facts from which a jury could find that Defendants' violated their constitutional rights under the state created danger theory, Defendants Lowery and Sibert are entitled to qualified immunity.

Plaintiffs argue there is a question of fact for the jury regarding whether the actions of Defendants Lowery and Sibert were deliberately indifferent to risk or merely negligent. *See Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 492 (6th Cir. 2002) (holding that deliberate indifference is the applicable standard where prison employees assert a constitutional violation against their employers). "Deliberate indifference has been equated with subjective recklessness, and requires the § 1983 plaintiff to show that the state 'official knows of and disregards an excessive risk to [the victim's] health or safety.'" *Ewolski*, 287 F.3d at 513 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Accordingly, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Once the state actor draws the necessary inference, 'the official must act or fail to act in a manner demonstrating reckless or callous indifference toward the individual's rights." *Sperle*, 297 F.3d at 493 (quoting *Ewolski*, 287 F.3d at 513) (internal quotation marks omitted).

The Court's conclusion that Defendants are entitled to qualified immunity does not change when the deliberate indifference standard is applied. Plaintiffs' claim falters on the

first prong of the deliberate indifference standard. That is, "the official must both be *aware of facts* from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837 (emphasis added). The facts of this case fail to demonstrate any awareness on the part of Defendants that a serious risk of harm existed. Plaintiffs contend that Lowery's knowledge that the hearing packets were given to prisoners and his act of disclosing the packets is sufficient to constitute deliberate indifference. This argument is misplaced. The fact that Lowery knew the hearing packets would go to the prisoners and that he gave the packets to the prisoners is not enough. There must be some evidence that Lowery knew or was aware that Plaintiffs' information was in the packet to constitute deliberate indifference. *See Id.*, *Ewolski*, 287 F.3d at 513 ("Deliberate indifference . . . requires the § 1983 plaintiff to show that the *state 'official knows of and disregards* an excessive risk . . . .") (quoting *Farmer*, 511 U.S. at 837) (emphasis added). Lowery was unaware that Plaintiffs' personal information was contained in the hearing packet. *See* Lowery Affidavit at ¶ 4, 7. Moreover, the record is devoid of any awareness on the part of Sibert from which he could infer that a substantial risk of harm existed. *See e.g.*, Deposition of Sibert at 84.

Two cases from the Sixth Circuit are instructive on the application of the deliberate indifference standard in the context of harm to prison employees from prisoners, *Sperle*, 297 F.3d 483 (6th Cir. 2002), and *Nobles v. Brown*, 985 F.2d 235 (6th Cir. 1992). In *Nobles*, the court held that a female state corrections officer who was taken hostage by an inmate and

subsequently raped failed to establish a violation of her due process rights. 985 F.3d at 238. The prisoner was known to be dangerous, and had taken another female corrections officer hostage five months before. *Id*. at 235-36. The court also found that prison officials did not use proper negotiation techniques during the crisis and it was during the failed negotiations that plaintiff was raped. *Id*. at 236. Nevertheless, the court explained that, "[h]owever derelict in their duties the defendant prison officials may have been here, it cannot be said that they *deliberately* decided to have plaintiff Nobles taken captive and raped . . . ." *Id*. at 236 (emphasis in original). This logic applies with equal force to the present case. It is clear that Defendants were negligent in the care by which they executed their responsibilities, but their actions do not reveal a deliberate decision to release Plaintiffs' personal information to the prisoners.

Moreover, in *Sperle*, the court held that plaintiff failed to establish that the state prison officials violated his wife's right to substantive due process where his wife, a prison employee, was murdered by an inmate. 297 F.3d at 495. Plaintiff's wife was working as a storekeeper in the prisoner store when an inmate, a former employee of the store, murdered her. *Id*. at 488. The court found that the prison warden was unresponsive to an inmate's attempt to warn him of a plan to commit the murder, a corrections officer observed a previous argument between the inmate and the victim, and defendants did not provide employees with certain available safety devices. *Id.* at 493. The court held that these

deficiencies were "insufficient to demonstrate that the defendants were deliberately indifferent to the events preceding Tammy Sperle's murder . . . ." *Id*. at 494.

Consistent with *Sperle* and *Nobles*, the Court holds that Defendants' actions in this case did not rise to the level of deliberate indifference. Defendants were unaware that the personal information was included in the hearing packet and that it would be disclosed to the prisoners. Absent this knowledge, it is nearly impossible to conclude that Defendants deliberately disclosed the personal information to the prisoners. Thus, Plaintiffs' claim that Defendants violated their right to substantive due process fails. In conclusion, a passage from *Nobles* is instructive on the disposition of this case:

> [T]he people of Michigan are free to create a system under which the state and its officials would be subjected to liability for failure to accord prison guards reasonable protection against harms inflicted by dangerous prisoners. This court, however, is not free to create such a system by turning the Due Process Clause into a Michigan Tort Claims Act.

985 F.2d at 237.[5] Because Plaintiffs have failed to allege facts from which a reasonable jury could find that Defendants' violated their constitutional rights under either the state-created

---

[5]Indeed, it appears the Michigan legislature has recently recognized the gravity of interest in the privacy of social security numbers by the passage of the Social Security Number Privacy Act, MICH. COMP. LAWS § 445.81 – 445.87 (2005). The act prohibits a person from intentionally displaying or publicly disclosing all or more than 4 sequential digits of a social security number. MICH. COMP. LAWS § 445.83. Violation of § 445.83 is a misdemeanor and an individual may bring a civil action against a violator. MICH. COMP. LAWS § 445.86. The act also requires that anyone who obtains more than 1 social security number in the ordinary course of business must create a privacy policy that maintains the confidentiality of the numbers, prohibits unlawful disclosure, limits access to documents containing social security numbers, and establishes penalties for policy violations. MICH. COMP. LAWS § 445.84.

danger theory or the deliberate indifference standard, Defendants Lowery and Sibert are entitled to qualified immunity. Moreover, because Defendants have not violated Plaintiffs' due process rights Plaintiffs' request for injunctive relief under § 1983 also must fail.

IV.

Plaintiffs also asserted violations of the state constitutional right to due process and fair and just treatment against Defendant Overton in his official capacity. *See* MICH. CONST., art. 1, § 17 (1963). In order to impose liability on the state for a constitutional tort Plaintiffs must prove that the constitutional violations occurred pursuant to a "custom or policy" of the governmental agency involved. *Jones v. Powell*, 462 Mich. 329, 334, 612 N.W.2d 423, 425 (2000); *Smith v. Dept. of Public Health*, 428 Mich. 540, 642, 410 N.W.2d 749, 794 (1987) (Boyle J., concurring). Plaintiffs contend that the disclosure occurred by virtue of the Internal Affairs policy of putting full names, dates of birth, and social security numbers in Internal Affairs investigative reports. Sibert did acknowledge that his "standard method of identifying individuals" was to place as much identifying information as possible in the report. Dep. of Sibert at 47. Moreover, the Internal Affairs Investigative Manual specifically requires investigators to include in their report the name, date of birth, driver's license number, and social security number of the victim and the suspect of the Internal Affairs investigation. *See* Internal Affairs Investigative Manual at 19, Exhibit D, attached to Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment (Docket #108).

Nevertheless, Plaintiffs' reliance upon the Internal Affairs policy is misplaced. The Internal Affairs policy is not relevant to the alleged constitutional violation, disclosure of the personal information to the prisoners. Merely placing the identifying information in the Internal Affairs report is not the constitutional violation. Plaintiffs' must show that MDOC has a policy of disclosing personal information to prisoners. The record demonstrates that no such policy exists. The best evidence of this is Lowery's affidavit explaining that if he had been aware that the hearing packet contained the Plaintiffs' social security numbers and dates of birth, he would not have released the information to the prisoners and would have sought authorization to redact it. Affidavit of Lowery at ¶ 6. Further, there is no evidence that any Defendant knew the personal information was in the hearing packet and was released to the prisoners until after the disclosure. Absent such knowledge, it is difficult to conclude that Defendants' were acting pursuant to a policy of releasing such information to prisoners. Plaintiffs' state constitutional claims against Defendant Overton must fail. Accordingly, the Court grants Defendants' motion for summary judgment on these claims.

V.

Plaintiffs' remaining claims are state law torts of invasion of privacy, intentional infliction of emotional distress, and gross negligence. These claims are precluded by the exclusive remedy provision of Michigan's workers compensation law. MICH. COMP. LAWS § 418.131 provides:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or

>   occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court.

MICH. COMP. LAWS § 418.131 (2001). *See also Travis v. Dreis & Krump Manufacturing Co.*, 453 Mich. 149, 172-73, 551 N.W.2d 132, 143 (1996). By its terms § 418.131 forecloses Plaintiffs' recovery because there is no evidence that Defendants' deliberately released the information to prisoners or acted with knowledge that an injury was certain to occur. Accordingly, Defendants' motion for summary judgment on Plaintiffs' state law tort claims is granted.[6]

## VI.

The Court reiterates that this was an unusual and regrettable occurrence. Plaintiffs' information should not have been released to prisoners. The Court recognizes that Plaintiffs have undoubtedly suffered as a result of the disclosure. The very nature of their employment places them in nearly constant danger. But the fact that they have suffered does not lead to the conclusion that Defendants are liable for the harm. Without evidence of knowledge, intent, or any subjective notice of the danger, Plaintiffs' claims must fail. Accordingly,

---

[6] Plaintiffs' have also filed a motion to strike the affidavit of Pamela Nelson. *See* Docket #111. Nelson's affidavit was not material to the disposition of this matter. Based upon the Court's resolution of this matter, Plaintiffs' motion is denied as moot.

Defendants' motion for summary judgment is granted.  An order will be entered consistent with this opinion.

Date:      June 21, 2005              /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE